IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA V.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 03162 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Angela V.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 21, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 22, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.  Procedural History**

On April 28, 2016, Plaintiff filed a claim for DIB and SSI, alleging disability since April 1, 2014 due to hypertension, cerebral vascular accident, dementia, stroke, left side weakness, and loss of vision in her left eye. [Dkt. 18-1, R. at 143.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 155, 166.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 14, 2019. [R. 72.] Plaintiff personally appeared and testified at the hearing and was not represented by counsel. [R. 72.] Vocational expert ("VE") Jacquelyn Schabacker also testified. [R. 72, 123.] On April 12, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 42.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

**II.  The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 32-33.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 1, 2014. [R. 34.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity, degenerative disc disease, left side hemiplegia/residuals, dementia, vision loss of the left eye, depression, and anxiety. [R. 34.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 34-36.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she could use foot controls on the left side occasionally; reach overhead on

the left occasionally and in all other directions frequently; frequently handle, finger, and feel; occasionally climb ramps and stairs; frequently stoop; occasionally kneel, crouch, and crawl; never work at unprotected heights; and never climb ropes, ladders, or scaffolds. [R. 36-40]. The ALJ further indicated that Plaintiff could have only occasional exposure to moving mechanical parts and motor vehicle operation, that she has only frequent near acuity and far acuity, and that she has occasional peripheral vision on the left. [R. 36-40.] Finally, the ALJ noted that Plaintiff can frequently interact with co-workers, supervisors, and the public, and that she can perform simple, routine tasks and make simple work-related decisions. [R. 36-40.] At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a child monitor. [R. 40.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 41-42.]

## **DISCUSSION**

### **I.**    **Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any

other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although

4

the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ committed reversible error by: (1) improperly evaluating Plaintiff's subjective symptoms; and (2) failing to render an RFC assessment supported by substantial evidence. For the following reasons, the Court disagrees.

### A. The ALJ's Evaluation of Plaintiff's Subjective Symptoms is Supported by Substantial Evidence

Plaintiff first argues that the ALJ evaluated her subjective symptoms under the incorrect legal standard. The ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical and other evidence in the record for the reasons explained in the decision." [R. 37.] Plaintiff asserts that the "not entirely consistent" language is Administration boilerplate that misstates the appropriate standard for evaluation of Plaintiff's subjective symptoms. While the Court agrees that the "not entirely consistent" language is "meaningless boilerplate," that language is "a problem, however, only if the ALJ does not identify and explain the relevant inconsistencies or other reasons for discounting the subjective complaints." *Hostetter v. Saul*, 841 F. App'x 983, 986 (7th Cir. 2021). An ALJ "must set forth 'specific reasons' for discounting subjective reports of symptoms," and

5

errs when she "uses boilerplate without specifying the reasons for discounting symptoms." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (noting that ALJ's use of "not entirely consistent" language does not definitively indicate that ALJ departed from "the appropriate preponderance-of-the-evidence standard").

In this case, the ALJ conducted an adequate evaluation of Plaintiff's subjective symptoms. Plaintiff first argues that the ALJ relied on Plaintiff's improvement without assessing whether Plaintiff improved sufficiently to sustain full-time work. Plaintiff notes that medical records demonstrate that Plaintiff suffered from pain, fatigue, and memory problems throughout the relevant period. But the ALJ considered Plaintiff's reports of pain, fatigue, and memory problems in the context of the full record, and provided several reasons why she did not believe Plaintiff's report of debilitating symptoms were consistent with the medical record, including: that Plaintiff often reported only mild pain; often denied fatigue; did not consistently present with a walker or cane; showed improvements in strength and pain symptoms; never had an x-ray, MRI, or CT scan of her lumbar spine; and that her physical examinations reveal normal range of motion in her lumbar spine and full strength and reflexes and did not document frequent signs of left-side weakness. [R. 37-38.] The ALJ recognized that Plaintiff was placed on Aricept, a dementia medication, but also noted that the record includes minimal mental health treatment and that the majority of examinations showed normal mental functioning. [R. 37-39.] The ALJ further credited an examiner's opinion that Plaintiff's mental impairments mildly impacted her functioning. [R. 39.] Moreover, the ALJ specifically accounted for Plaintiff's memory deficits in crafting the RFC (which the Court discusses in greater detail below). [R. 39-40.] Plaintiff has not identified any line of evidence that the ALJ ignored or made a showing that the ALJ engaged in impermissible cherry-picking. Plaintiff in effect asks the Court to reweigh the medical evidence,

but the Court is not empowered to do so. *See, e.g., Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) ("We will not, however, reweigh the evidence or substitute our judgment for that of the ALJ's.").

Plaintiff next argues that the ALJ erred in rejecting her testimony regarding her tolerance for activity as the Plaintiff characterizes it, "because no specific diagnosis was rendered at the time of Plaintiff's cardiac stress test." Pl's Br. at 10. Plaintiff notes that a simultaneous EKG was in fact consistent with bradycardia. As an initial matter, as the Commissioner argues, the ALJ's discussion of Plaintiff's cardiological issues came in the ALJ's step two analysis; but the ALJ proceeded to steps three through five after concluding that Plaintiff suffered from other severe impairments. So long as the ALJ "properly considered all of [Plaintiff's] severe and non-severe impairments" in determining the RFC, any error at step two is harmless, however. *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015). Here, the ALJ considered Plaintiff's cardiological issues and acknowledged Plaintiff's abnormal stress test, but also noted that Plaintiff's hypertension was controlled, that Plaintiff had no chronic complications such as chronic chest pain, palpitations, syncope, dyspnea, or chronic edema, and that Plaintiff received no other cardiology treatment. [R. 34.]; *see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (holding that ALJ properly assessed impact of non-severe depression in noting that the claimant "did not seek out treatment for depression during the period of purported disability"). In crafting the RFC, the ALJ noted that Plaintiff made no persistent claims of fatigue. [R. 38, 40.] Plaintiff has not demonstrated that the ALJ's discussion of Plaintiff's cardiological issues was unsupported by substantial evidence; instead, Plaintiff simply invites the Court to reweigh the medical evidence to conclude that the evidence supported all the limitations to which the Plaintiff testified. The Court may not do so. *See Pepper*, 712 F.3d at 362.

7

Finally, Plaintiff argues that the ALJ improperly assessed Plaintiff's mental symptoms by failing to incorporate the findings of an evaluating psychologist, Dr. Bookseller, and the findings of two agency consultants who Plaintiff maintains identified more severe limitations than the ALJ credited. The problem with this argument is that neither Dr. Bookseller nor the agency consultants actually identified more serious limitations than those credited by the ALJ. Plaintiff notes that Dr. Bookseller's report identified objective test results that Plaintiff believes suggest a severe impairment—for instance, inability to name recent events, cities, and presidents, and inability to perform serial 7s. But Dr. Bookseller ultimately opined that Plaintiff's impairments only mildly impacted Plaintiff's functioning, an opinion to which the ALJ assigned great weight.[3] [R. 39, 517.] Plaintiff, in effect, argues that the ALJ should have independently interpreted Plaintiff's objective test results and come to a different conclusion than Dr. Bookseller, but ALJs may not "play doctor" by interpreting objective results on their own. *See, e.g., McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (ALJ erred by independently interpreting MRI results); *Tomas S. v. Saul*, No. 19 CV 0726, 2020 WL 1491178, at *3 (N.D. Ill. Mar. 27, 2020) (ALJ improperly crafted RFC "based on her independent assessment of Plaintiff's mental health records").

Likewise, Plaintiff argues that the agency consultants "found that Plaintiff would be *unable to* sustain attention and concentration for extended periods," Pl's Br. at 11 (emphasis added), but the consultants made no such finding. The consultants concluded that Plaintiff had *moderate limitations* in her ability to understand, remember, and carry out detailed instructions and in her ability to maintain attention and concentration for extended periods. [R. 152, 178.] But, as is

---

[3] On reply, Plaintiff argues that Dr. Bookseller's opinion with respect to Plaintiff's functioning was not in reference to her memory, as the sentence immediately preceding Dr. Bookseller's opinion referred only to Plaintiff's "sadness, anxiety and anhedonia." [R. 517.] But in the context of the full report, it is evident that Dr. Bookseller's opinion regarding Plaintiff's functioning was in reference to each of the "medical concerns" Dr. Bookseller addressed. [R. 517.]

8

discussed more thoroughly below in the Court's discussion of the RFC, a consultant's conclusion that Plaintiff is moderately limited in certain areas related to concentration, persistence, and pace does not necessarily mean that the Plaintiff is "unable to sustain attention and concentration for extended periods." Pl's Br. at 11; *see, e.g.*, *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("[A] 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."). Ultimately, the ALJ found that Plaintiff was not as limited mentally as she indicated, based on Dr. Bookseller's opinion that Plaintiff was mildly limited, Plaintiff's limited mental health treatment history, and Plaintiff's largely normal findings on mental status examinations. [R. 39.] Plaintiff does not identify any reason supported by the record why the ALJ's evaluation of Plaintiff's subjective mental symptoms was patently wrong. *See, e.g., Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (ALJ's assessment of subjective symptoms will be affirmed unless "patently wrong").

### B. The ALJ's RFC Assessment Does Not Require Remand

Next, Plaintiff argues that the ALJ improperly evaluated Plaintiff's residual functional capacity. Plaintiff first argues that the ALJ erred by failing to include a limitation to 1-2 step tasks in her RFC determination and in her hypothetical to the vocational expert. The Court agrees that the ALJ's failure to include this limitation was error, but concludes that the error was harmless. The ALJ noted that the findings of Dr. Bookseller—whose opinions the ALJ afforded great weight—were consistent with an agency consultant's opinion limiting Plaintiff to one to two step tasks. [R. 40.] The ALJ failed, however, to include any corresponding limitation in the RFC or her hypothetical to the vocational expert. [R. 36-37, 124-130.] The ALJ therefore erred by failing to adequately account for all of Plaintiff's limitations in the RFC and hypothetical. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("Our caselaw emphasizes that 'both the

9

hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record[.]'").

This error, however, was harmless, because one of the jobs identified by the vocational expert—housekeeping cleaner—had a Dictionary of Occupational Titles reasoning level of 1. See *DOT Code* 323.687-014, 1991 WL 672783. A reasoning level of one means the job requires reasoning sufficient to apply commonsense understanding to carry out simple one- or two-step instructions, and to deal with standardized situations with occasional or no variables in or from the situation encountered on the job. *Id*. Indeed, Plaintiff—operating under the incorrect belief that each of the positions identified by the VE had a reasoning level of 2—initially argued that the ALJ's error was not harmless because the vocational expert did not identify any jobs with a DOT reasoning level of 1. Pl's Br. at 13 (noting that "1-2 step instructions most closely corresponds to Reasoning level 1 jobs, which limits a person to 1-2 step tasks"). Because the vocational expert testified that there are over 200,000 housekeeping cleaner jobs in the national economy, [R. 125], the ALJ's error in failing to include a 1-2 step task limitation in the RFC and hypothetical is harmless. *See, e.g., Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016) (error related to VE testimony was harmless where remaining positions unaffected by error "totaled 5303 jobs in Wisconsin alone").

Plaintiff next argues that even had the ALJ included a 1-2 step task limitation, the ALJ's RFC is still unsupported by substantial evidence under the line of Seventh Circuit cases addressing concentration, persistence, and pace limitations. At step three, the ALJ concluded that Plaintiff had moderate limitations in concentration, persistence, or pace. [R. 36.] Plaintiff argues that the ALJ's RFC is akin to the "simple, routine tasks" formulation that the Seventh Circuit has indicated is generally inadequate to "account for problems of concentration, persistence or pace." *Crump*,

10

932 F.3d at 570. In some circumstances, however, a limitation to unskilled work can account for CPP difficulties if the record indicates that the limitation addresses the underlying symptoms. *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022) (collecting cases). This includes instances where a medical opinion adequately translates a finding of moderate CPP limitations into an RFC that accounts for a claimant's specific impairments. *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (affirming where agency consultants "translated" moderate CPP checklist ratings into an RFC that claimant "could carry out simple instructions and make simple decisions with no significant limitation"); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("The ALJ drew this restriction from the opinion of the medical expert, Dr. Rozenfeld, which is a permissible way of "translating" medical evidence into work-related restrictions."). "The question to be answered in every case is whether the ALJ has adequately explained, with support from the medical record," how the identified restrictions address "the claimant's specific concentration, persistence, or pace limitations." *Christopher G.*, 2022 WL 1989119, at *4.

      Here, the mental limitations identified by the ALJ were supported by substantial evidence. The ALJ's RFC limited the Plaintiff to simple, routine, tasks, and simple work-related decisions, as well as frequent interaction with co-workers, supervisors, and the public. [R. 36-37.]. As noted above, the ALJ also found that a limitation to 1-2 step tasks was supported by the record, and the ALJ's failure to include that limitation in the RFC and hypothetical to the VE was harmless. [R. 40.] In arriving at her conclusions, the ALJ properly relied on an agency consultant's adequate translation of Plaintiff's moderate CPP limitations into an RFC. The agency consultant at the

reconsideration stage, Dr. Gilliland, found that Plaintiff was mentally capable of performing 1-2 step tasks in a routine schedule with reasonable rest periods and limited interaction with the general public.[4] [R. 179.] Dr. Gilliland's RFC opinion also noted that Plaintiff's limitations were in her ability to understand, remember, and carry out detailed instructions. [R. 179.] Moreover, the ALJ specifically found Dr. Gilliland's assessment persuasive—with the exception of Dr. Gilliland's opinions regarding Plaintiff's social functioning—due to the findings of Dr. Bookseller and "the claimant's reported symptoms of memory loss and treatment with dementia medication." [R. 40.] This case is thus akin to the line of Seventh Circuit cases finding that restrictions similar to those identified by the ALJ in this case adequately account for the claimant's specific, moderate CPP limitations. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (limitation to "routine tasks and limited interactions with others" specifically accounted for claimant's CPP limitations arising from being in crowds); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (limitations to simple, routine and repetitive tasks, among others, appropriately accounted for claimant's specific CPP limitations, which were largely "stress- and panic-related"). Put differently, here, the ALJ—with support from the record—specifically tied the limitations the ALJ found supported by the record to Plaintiff's memory problems, in addition to relying on Dr. Gilliland's adequate "translation" of Plaintiff's moderate CPP limitations, into an RFC assessment. Thus, with the exception of the ALJ's harmless error in failing to include a limitation to 1-2 step tasks, the ALJ did not err in accounting for Plaintiff's moderate CPP limitations.

      Finally, Plaintiff argues that the ALJ treated the opinions of an examining physician, Dr. Jain, inconsistently. Dr. Jain opined that Plaintiff could sit for 30 minutes, stand for 45 minutes

---

[4] The ALJ did not adopt the social component of the consultant's RFC, but Plaintiff does not challenge that portion of the ALJ's opinion on appeal.

with use of a walker, walk for one and a half blocks with use of a walker, lift/carry 10 to 15 pounds on the right side, and lift/carry nothing on the left side due to a history of stroke. [R. 514.] Dr. Jain further opined that Plaintiff could handle objects (like opening doorknobs, cans, or jars) with her right hand but could not do so with her left hand. [R. 514.] The ALJ gave Dr. Jain's opinions little weight, noting that they were not fully consistent with the evidence of record. [R. 39.] The ALJ noted that Dr. Jain's findings of decreased strength in Plaintiff's upper and lower extremities, impaired gait, and decreased manipulative function with her left hand are not present in medical treatment notes throughout the record, and that treatment records do not show that Plaintiff presented with a walker or cane. [R. 39.] The ALJ also explained that the record does not document signs of residual weakness or chronic pain to support Dr. Jain's sitting, standing, walking, or lifting/carrying limitations. [R. 39.] Nonetheless, the ALJ found that "additional manipulative, postural, and environmental limitations" were "warranted," based on "claimant's testimony regarding residual left-side symptoms, as well as the findings of Dr. Jain." [R. 40.]

Notably, Plaintiff does not argue simply that the ALJ erred by assigning little weight to Dr. Jain's opinions. Instead, according to Plaintiff, it was error for the ALJ to assign little weight to Dr. Jain's opinions but then also cite his findings in support of additional physical limitations. But there is no inconsistency in this respect in the ALJ's opinion. The ALJ cited Dr. Jain's findings, in conjunction with the Plaintiff's testimony, in finding that Plaintiff had different and less drastic limitations than those to which Dr. Jain opined. There is nothing inconsistent about assigning little weight to Dr. Jain's opinions, but citing his findings (in addition to other evidence) in support of less restrictive RFC limitations that are less restrictive than the severe limitations to which Dr. Jain opined. The ALJ thus did not err in his treatment of Dr. Jain's opinions and findings.

13

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [21] is denied, and the Commissioner's motion for summary judgment [22] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 9/9/2022

BETH W. JANTZ
United States Magistrate Judge